Joshua A. Gildea
Atty. ID: 205911
FITZPATRICK LENTZ & BUBBA, PC
4001 Schoolhouse Lane, P.O. Box 219
Center Valley, PA 18034
610-797-9000
jgildea@flblaw.com

Melissa Salimbene (pro hac vice pending)
Mauro G. Tucci Jr. (pro hac vice pending)
CHIESA SHAHINIAN & GIANTOMASI PC
One Boland Drive
West Orange, New Jersey 07052
(973) 325-1500

*Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT FOR
## THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SHIFT4 PAYMENTS, LLC,<br><br>                    Plaintiff,<br><br>v.<br><br>ERIC SMITH; ALLIANCE CONSULTANT GROUP, INC. d/b/a Alliance Bundles; JOHN DOES 1-10, whose names are unknown; and ABC COMPANIES 1-10, whose names are unknown;<br><br>                    Defendants. | Case No.<br><br><br>**COMPLAINT**<br><br><br>**Jury Trial Demanded** |

Plaintiff Shift4 Payments, LLC ("Shift4"), by and through its undersigned attorneys, for its complaint against defendants Eric Smith ("Smith"), Alliance Consultant Group, Inc. ("Alliance"), John Does 1-10, and ABC Companies 1-10 (collectively, "Defendants"), alleges as follows:

### NATURE OF ACTION

1.      This is an action seeking injunctive relief and damages for, among other things, trademark and service mark infringement, unfair competition, cybersquatting, defamation, product

4846-8951-6677

disparagement / trade libel, tortious interference with contract, tortious interference with prospective economic advantage, conspiracy, and other relief arising under federal law, specifically 15 U.S.C. § 1051 *et seq.* (hereinafter "Lanham Act'), and the statutory and common law of the Commonwealth of Pennsylvania, all arising from Defendants' extortionate conduct orchestrated to unlawfully and unfairly compete with Shift4 and derive commercial profits by inflicting harm on Shift4 by utilizing Shift4's trademarks and service marks to mislead consumers and by intentionally driving customers away from Shift4's affiliated sales representatives who market Shift4's payment processing products and services on the internet.

2.      When Shift4 sales representatives post advertisements on marketing websites advertising in major metropolitan markets, Defendants promptly post false, duplicative advertisements on those same websites and harass the sales representatives with disruptive "robo-calls" that are machine-dialed calls that continuously ring on a telephone phone line. Specifically, Defendants duplicate Shift4 sales representatives' advertisements, including proprietary and trademarked materials owned by Shift4. Defendants' duplicate advertisements include slightly different telephone numbers (usually one or two digits off) or confusingly similar website addresses that utilize Shift4's HARBORTOUCH Mark (such as using ".net" rather than ".com") that are intended to and do confuse and mislead current and potential future Shift4 customers by redirecting them to Defendants. Moreover, in an effort to "punish" Shift4's sales representatives and dissuade them from posting future internet advertisements, Defendants create a constant stream of "robo-calls" from false telephone numbers that jam the sales representatives' telephone lines and prevent them from talking to customers.

3.      Adding insult to injury, Defendants are publishing defamatory and disparaging false statements about Shift4 and its business practices that were designed to and had the effect of maligning Shift4's reputation and business and improperly diverting prospective customers from purchasing Shift4's products and services. As a result of Defendants' tortious conduct, Shift4 has

4846-8951-6677

suffered and continues to suffer harm to its reputation, loss of goodwill, and money damages.  The harm to Shift4 is continuing as the false, defamatory and disparaging statements continue to be widely disseminated by Defendants.

4.      Given the wanton and egregious conduct perpetrated by Defendants, this is an appropriate case for an award of punitive damages.

## THE PARTIES

5.      Shift4, which was formerly known as Harbortouch Payments, is a limited liability company organized and existing under the laws of the State of Delaware and having a principal place of business at 2202 North Irving Street, Allentown, Pennsylvania.

6.      Upon information and belief, Alliance is a business entity organized and existing under the laws of the State of Florida and has a principal place of business at 3393 West Vine Street, Suite 302, Kissimmee, Florida.   Alliance also has three satellite offices located in Pennsylvania, including one at 1275 Glenlivet Drive, Allentown, Pennsylvania.

7.      Smith is an individual who, upon information and belief, is a citizen of the State of Florida and resides at 1140 Windway Circle, Kissimmee, Florida.  Upon information and belief, Smith is the Chief Executive Officer of Alliance.

8.      Shift4 is presently unaware of the true names and capacities of Defendants sued herein as John Does 1-10 and ABC Companies 1-10, and therefore brings claims against said Defendants by such fictitious names.  Shift4 will amend this Complaint to allege the true names and capacities of such fictitiously named defendants when the same have been ascertained. Upon information and belief, each of the fictitiously named defendants is responsible in some manner for the occurrences, acts and omissions alleged herein and the harms to Shift4 were proximately caused by their conduct.

4846-8951-6677

## JURISDICTION AND VENUE

9.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338 because Shift4's claims arise under the trademark and service mark laws of the United States.  This Court also has supplemental jurisdiction pursuant to 28 U.S.C. §§ 1338(b) and 1367 over Shift4's claims that arise under the laws of the Commonwealth of Pennsylvania.

10.      This Court has personal jurisdiction over the parties to this action because (i) Shift4's claims arise in this judicial district; (ii) Shift4 is located within this judicial district; and (iii) each party does substantial business within this judicial district.

11.      Venue lies within and is proper in this District and Court pursuant to 28 U.S.C. § 1391 because Shift4's claims arise in this judicial district, each party does substantial business in this judicial district, and a substantial part of the events, acts or omissions giving rise to the claims herein occurred in this judicial district. The Court has jurisdiction of Shift4's pendant state claims pursuant to 28 U.S.C. § 1367(a). Shift4 seeks or shall seek injunctive relief and damages against Defendants under principles of pendent jurisdiction over any claims arising under Pennsylvania law, in that the claims flow from a common nucleus of operative facts.

## FACTUAL BACKGROUND

### A.  Shift4's Business Model

12.      Shift4 is an industry leader in the business of providing payment solutions to businesses in the retail, hospitality, food and beverage, and e-commerce sectors.  Its offerings range from basic credit card processing to integrated point of sale computer systems to comprehensive enterprise solutions, including its popular "Harbortouch" brand offerings. Upon its founding in 1999, Shift4 rapidly grew into an industry leader in secure payment processing and now provides its services to more than 200,000 businesses (commonly referred to as "merchants") ranging from national chain restaurants and hotels to local small businesses.

4846-8951-6677

13.     Shift4 generates revenue from fees paid by merchants using its payment processing services pursuant to a contract between Shift4 and each merchant known as a merchant agreement.  Every time a Shift4 merchant swipes a credit card or accepts some other electronic payment from a retail customer, that merchant incurs a fee for Shift4 processing that payment.  For this reason, Shift4's revenues are dependent on the volume of payments initiated by its merchants.

14.     Shift4 offers payment processing services and products under several brand names.  Since approximately 2008, Shift4's most well-known and recognized brand has been its Harbortouch brand point of sale (POS) systems used in conjunction with Shift4's payment processing services.

15.     From its inception, Shift4's business development and growth has relied in large part on third-party sales representatives (known in the industry as an independent sales office or "ISO") that market Shift4's various payment processing services and products, identify potential merchants, assist those merchants in opening a Shift4 merchant account governed via a merchant agreement between Shift4 and the merchant, and often serve as Shift4's primary point of contact with the merchant.  Shift4 has a network of thousands of ISOs across the country.

16.     To facilitate the ISOs' marketing efforts, Shift4 grants ISOs licenses to use Shift4's registered trademarks, service marks and other proprietary marketing materials to advertise Shift4's services and products.  While each ISO has some flexibility to create its own marketing plan and advertisements, Shift4 retains full ownership of its trademarks, service marks and marketing materials.  Shift4 also maintains the right to control its ISO's use of its trademarks and service marks, and Shift4 maintains direct control over the quality of goods and services provided under its trademarks and service marks.

4846-8951-6677

17.     ISOs are typically compensated by Shift4 with monthly residual commissions based on the volume of payments initiated by merchants originated by that ISO.   Shift4 continues to pay these commissions so long as the ISO remains in good standing and the merchants originated by that ISO are actively processing payments with Shift4.  Merchants that terminate their accounts with Shift4 result in lost revenue for Shift4 and lost commissions for the ISO.  This incentivizes ISOs to develop and actively maintain their portfolios of merchants processing through Shift4.

18.     Shift4's business model has benefitted its ISOs over the years.  With industry-leading products and services and strong marketing support, Shift4 ISOs are able to develop and maintain valuable merchant portfolios that generate recurring revenue for Shift4 and commissions for ISOs.

**B.  Shift4's Intellectual Property Rights**

19.     Shift4 is the owner of the well-known and distinctive trademark and service mark HARBORTOUCH, which mark Shift4 and its predecessor, United Bank Card, Inc., has been continuously using in connection with its various point of sale, computer software, electronic processing goods and financial transaction services since at least as early as 2008 (hereinafter the "HARBORTOUCH Mark").  Shift4 owns three federal Trademark and Service Mark Registrations and four pending Trademark and Service Mark Applications that include the HARBORTOUCH Mark.

20.     Shift4 is the owner of United States Trademark and Service Mark Registration No. 3,586,038 for its HARBORTOUCH Logo (depicted below) in International Class 9 for *computer software used to provide point of sale electronic payment services, authentication, identification and transaction services for merchants by means of online databases; computer software used to provide point of sale electronic processing and transmission of payments by merchants; computer software used to provide point of sale electronic processing and*

*transmission of payments to merchants; computer software used to provide point of sale electronic processing and transmission of payments by merchants; computer software used to provide point of sale electronic processing and transmission of payment to merchants via online debit, checking, credit card, and loyalty/reward account payments; computer software used to provide point of sale electronic processing and transmission of payments by merchants via online debit, checking, credit card, and loyalty account payments* and in International Class 36 for *Financial transaction services, namely, providing secure commercial transactions and payment options via computer terminal at a point of sale* (hereinafter the "Harbortouch Logo Registration").   This registration was issued on March 10, 2009 and remains valid and subsisting.  A printout from the United States Patent & Trademark Office's ("USPTO") Online Database of the Harbortouch Logo Registration is attached hereto as **Exhibit A**.



21.     Shift4 is also the owner of United States Trademark and Service Mark Registration No. 4,879,687 for the mark HARBORTOUCH ECHO in International Class 9 for *Point of sale system hardware and software used to conduct electronic transactions with credit, debit, pre-paid and gift cards and other electronic payment types; Point of sale system hardware including, monitor screen, cash drawer, receipt printer, keyboard, customer display and other related hardware accessories, namely, NFC/EMV card readers and wireless routers; Point of sale interface software replicating POS system, electronic cash register and calculator functionality; Software for electronic transaction payment processing, authentication, identification and transaction services for merchants by means of online databases; Software for POS system based merchant services namely, inventory tracking, menu development, cash management, cloud based memory and remote system connectivity* and in International Class 36 for *Broad based financial transaction services, namely, providing secure commercial*

*transactions, financial services and payment options to merchants; electronic payment services involving electronic processing and subsequent transmission of payment data, namely, electronic payment options offered by means of computer based systems, radio frequency identification devices, near field communication, mobile communication technology, global computer networks and the internet* (hereinafter the "Harbortouch Echo Registration"). This registration was issued on January 5, 2016 and remains valid and subsisting. A printout from USPTO's Online Database of the Harbortouch Echo Registration is attached hereto as **Exhibit B**.

22.     Shift4 is also the owner of United States Trademark and Service Mark Registration No. 4,879,691 for the mark HARBORTOUCH ELITE in International Class 9 for *Point of sale system hardware and software used to conduct electronic transactions with credit, debit, pre-paid and gift cards and other electronic payment types; Point of sale system hardware including, monitor screen, cash drawer, receipt printer, keyboard, customer display and other related hardware accessories, namely, NFC/EMV card readers and wireless routers; Software for electronic transaction payment processing, authentication, identification and transaction services for merchants; Software for POS system based merchant services, namely, inventory tracking, menu development, cash management, cloud based memory and remote system connectivity* and in International Class 36 for *Broad based financial transaction services, namely, providing secure commercial transactions, financial services and payment options to merchants; Electronic payment services involving electronic processing and subsequent transmission of payment data, namely, electronic payment options offered by means of computer based systems, radio frequency identification devices, near field communication, mobile communication technology, global computer networks and the Internet* (hereinafter the "Harbortouch Elite Registration" and, together with the Harbortouch Logo Registration and the Harbortouch Echo Registration, collectively, the "Harbortouch Registrations"). This

4846-8951-6677

registration was issued on January 5, 2016 and remains valid and subsisting.  A printout from the USPTO's Online Database of the Harbortouch Elite Registration is attached hereto as **Exhibit C**.

23.     In addition to the Harbortouch Registrations, Shift4 is also the owner of two pending Trademark and Service Mark Applications, Serial Nos. 87/414,419 and 87/414,422, for the mark HARBORTOUCH SMARTPOS in International Classes 9 and 36, as well as two pending Trademark and Service Mark Applications, Serial Nos. 87/414,425 and 87/414,429 for the mark HARBORTOUCH SPOS in International Classes 9 and 36 (hereinafter, collectively, the "Harbortouch Applications").   The USPTO has issued Notices of Allowance in connection with each of the Harbortouch Applications.  Printouts from the USPTO's Online Database of the Harbortouch Applications are attached hereto as **Exhibit D**.

24.     In addition to the specific marks covered by the Harbortouch Registrations and Harbortouch Applications, Shift4 has consistently utilized the HARBORTOUCH Mark on its own and with additional wording and design elements in connection with its goods and services since at least as early as 2008.

25.     The HARBORTOUCH Mark is inherently distinctive for point of sale, computer software, electronic processing goods and financial transaction services, is widely recognized by the relevant consuming public in the United States and is synonymous with Shift4's business.

26.     As a result of all of the foregoing, Shift4 has federal and common law rights in and to the HARBORTOUCH Mark dating back to at least as early as 2008, long prior to when the Defendants commenced their unauthorized use of the term in connection with their infringing, fraudulent and unlawful commercial activities.

27.     Shift4 has invested a substantial amount of time, money and other resources promoting, marketing, advertising and publicizing its wide array of goods and services

4846-8951-6677

provided under the HARBORTOUCH Mark.  As a result of Shift4's substantial marketing and promotional efforts, the HARBORTOUCH Mark has acquired substantial consumer recognition and goodwill and is a strong and famous mark.  The HARBORTOUCH Mark has become an important source indicator that identifies and distinguishes Shift4's goods and services to customers throughout the United States and internationally.  For all of the foregoing reasons, the HARBORTOUCH Mark is an exceedingly valuable asset of Shift4.

28.     Additionally, since 2017, Shift4 has had a license to use the likeness of celebrity John Taffer of the popular television program "Bar Rescue" and the Bar Rescue logo in its advertising pursuant to an endorsement agreement, and current Shift4 ISOs are in turn authorized to use Taffer's likeness and references to Bar Rescue in their marketing materials.

## C. Defendants Seek to Harm Shift4 by Orchestrating an Unlawful Campaign of Disruption Against Shift4's ISOs

29.     Alliance, which at all times relevant was and still is operated by Smith, was formerly an ISO for Shift4 from October 2015 until Shift4 terminated their relationship in October 2017.

30.     Upon information and belief, during the time Alliance was an ISO for Shift4, Alliance was also marketing POS systems and products for other companies.

31.     Though Alliance was based in Florida, it marketed Shift4's services and products nationwide, primarily by posting advertisements on various websites (including but not limited to www.Craigslist.com) in metropolitan areas.  Internet advertising was not a novel way to generate leads for potential merchants because this was (and is) universally known to be an effective marketing tool, and many other ISOs advertised Shift4 products and services on the internet.

32.     While it is possible that Shift4 ISOs may compete for merchants amongst themselves (as well as against other companies offering payment processing services), Shift4 ISOs generally do not purposely target each other to frustrate their marketing and business development efforts.  That changed in or about 2016 when Defendants took unlawful steps (including utilizing the HARBORTOUCH Mark without authorization) to drive Shift4 and its other ISOs off certain websites and began to harass and threaten Shift4 ISOs until they agreed to stop posting advertisements on websites on which Alliance also advertised.

### i.  *Plymouth Rock Merchant Services & David Iava*

33.     Specifically, in or about April 2016, David Iava ("Iava"), the owner of a Shift4 ISO in Massachusetts named Plymouth Rock Merchant Services ("Plymouth"), noticed that within hours of posting each of Plymouth's Shift4 advertisements to certain webpages, an apparent duplicate of the advertisement would appear on the same web page immediately above the one first posted by Plymouth as if that second advertisement, which was nearly identical to Plymouth's, was actually posted prior to Plymouth's advertisement.  During this time, the number of Plymouth's new merchant leads coming from that website dropped significantly, resulting in a loss of potential revenue for Shift4.

34.     Upon closer inspection, Iava discovered that while the text of the duplicate advertisements and graphics (including Shift4 trademarks and marketing materials) were identical, the phone number in the duplicate advertisements were slightly different from Plymouth's phone number – typically off by just one digit.  Similarly, Plymouth's website (which is HTAPOS.com) in the duplicate advertisements had been changed to HTAPOS.net, which, when clicked, redirects the user to defendant Alliance's website, www.alliancebundle.com.

35.     Iava promptly called the telephone number listed in the duplicate advertisement and spoke to Smith, who admitted to Iava that he was responsible for posting the duplicate internet advertisements that were tricking potential merchant leads into contacting Alliance when they thought they were calling Plymouth or visiting Plymouth's website.

36.     During the course of that initial telephone call and two others during that week, Smith made defamatory comments about Shift4's chief executive officer and bragged to Iava how successful he was, offering Iava an airline ticket to Florida to discuss Iava leaving Shift4 and working for Smith at Alliance.

37.     When Iava ultimately rejected Smith's offer, Smith again told Iava that if Plymouth does not agree to stop advertising on certain websites, Smith would force Plymouth to stop.

38.     During these telephone calls, Smith, who, upon information and belief, has a computer science background, also bragged that he has the ability to manipulate advertisement postings to position his subsequently posted advertisements directly above his competitors – including Plymouth – in order to create confusion and divert customers because many internet users tend to rely on the posting higher on the webpage rather than searching further down the listings.  Smith further admitted that he was doing this to many other Shift4 ISOs around the country, and not just to Plymouth.

39.     Shortly after that last call with Smith, Plymouth started receiving harassing robo-telephone calls that would continue throughout the day.  Upon information and belief, Smith was behind these robo-calls and was making them to tie up Plymouth's telephone lines and disrupt its business operations.  For example, Plymouth's phone would ring approximately

every 30 seconds and, when Iava answered, there was only static at the other end of the line. Plymouth continued to receive these robo-calls for several days.

40.     The telephone disruption ceased for a few days, but it did not end.  Rather, several days later, Iava received a telephone call and the caller ID showed his father's telephone number, but his father had passed away two years earlier.  When Iava answered the call, Smith was on the line.  Smith again told Iava to cease advertising on particular websites and threatened Iava, saying he knew all of Iava's personal information, including his home address and the address of his ex-wife.

41.     The following week, Smith sent Iava an e-mail claiming he wanted to make Iava a business offer and asked Iava to speak with Smith's colleague, Joshua Tarter ("Tarter"), to discuss the supposed offer.

42.     Over the course of several telephone discussions, Tarter explained to Iava that Smith was the individual behind the infringing advertisements and robo-calls.  For example, Tarter informed Iava that Smith had a "guy" in India or Pakistan who has the technical ability to disrupt businesses with constant calls from fake "ghost" telephone numbers, such as the call from Iava's father's number, that appear on a telephone's caller ID as one telephone number but are really calling from a different number.

43.     Tarter also confirmed that Smith had physically threatened and harassed other Shift4 ISOs, and for this reason Tarter was hoping to buy out Smith's interest in Alliance, though Tarter alternately suggested that Smith was his employee or business partner.  Iava declined any business arrangement with Smith, Alliance, or Tarter.

44.     For several months thereafter, every time Plymouth would post a Shift4 advertisement to certain webpages for metropolitan areas, Defendants would create a

misleading duplicate advertisement and Smith would initiate a telephone barrage that would last for three or four days.  A number of these duplicate false advertisements were posted after the termination of Smith's relationship with Shift4 and utilize the HARBORTOUCH Mark as well as Shift4's valuable proprietary marketing materials without Shift4's authorization.

45.     Upon information and belief, in or about April 2017, Plymouth obtained a copyright registration for one of his Shift4 advertisements prior to posting it, and that advertisement too was promptly duplicated by Defendants to redirect users to Alliance.

46.     Shortly thereafter, Iava again spoke with Smith by telephone to again demand that Alliance cease duplicating Plymouth's Shift4 advertisements.  This demand was repeated via text message and e-mail on or about May 1, 2017.  Days later, Iava received a harassing telephone call from Smith and another round of disruptive robo-calls.

47.     As a result of Smith's harassment, Iava has been forced to stop posting advertisements on certain webpages for larger metropolitan areas that Smith apparently monitors, all to the detriment of Shift4.  Nevertheless, whenever Smith finds a Plymouth advertisement for Shift4, a fake duplicate advertisement is quickly posted and Plymouth receives over 50 robo-calls per day for several days.

48.     Most recently, upon information and belief, Plymouth was generally able to avoid Smith in December 2018 by not posting advertisements, but the robo-calls resumed as soon as Plymouth started posting again on websites apparently preferred by Alliance.

### ii.  Harbortouch Screen & Tucker Thakrar

49.     Defendants have also targeted another Shift4 ISO called Harbortouch Screen, whose owner Tucker Thakrar ("Thakrar") serves as a member of Shift4's ISO advisory board.  Like Plymouth and other Shift4 ISOs targeted by Defendants, Harbortouch Screen's

4846-8951-6677

advertisements for Shift4 are being copied with a false (but very similar) telephone number and a false (but very similar) website address, both of which redirect current and potential Shift4 merchants to Defendants.

50.     Specifically,     Harbortouch     Screen's     website     address     is "HarbortouchScreen.com," but Alliance's duplicate Shift4 advertisements include the address "HarbortouchScreen.us," which redirects the user to an alternate website associated with Defendants.  As with Iava, these duplicate false advertisements utilize the HARBORTOUCH Mark and Shift4's valuable proprietary marketing materials without Shift4's authorization.

51.     Harbortouch Screen was also subjected to Defendants' harassing robo-calls that disrupted its business operations.  Like Iava, Thakrar and his family also received physically threatening calls from Smith in the middle of the night, referencing Thakrar's children, their school, his home, and his automobile.  During one of his threatening calls, Smith told Thakrar that Harbortouch Screen must stop advertising on a certain website because Smith was "there first."

52.     On June 6, 2017, Harbortouch Screen served Smith with a cease and desist letter demanding that he stop duplicating Harbortouch Screen's internet advertisements.

53.     Smith responded to Thakrar via telephone on June 8, 2017, at which time Smith claimed Alliance had been advertising on the subject website before Harbortouch Screen and, after bragging about his wealth, urged Thakrar to work with him.  Smith also agreed to stop copying Harbortouch Screen's advertisements and to remove any Alliance advertisements that duplicated Harbortouch Screen advertisements for Shift products and services by June 12, 2017.  However, Smith failed to do so.

54.     When Smith failed to fulfill his promise to remove Alliance's duplicative advertisements and cease copying Harbortouch Screen's advertisements, Thakrar sent Smith an e-mail dated June 26, 2017 repeating his demand to remove the Alliance advertisement.  Smith replied that he had directed his advertiser to make Alliance's advertisements unique but that both companies were selling Harbortouch products and services (at that point, Alliance was still operating as an ISO of Shift4) and he urged Thakrar to work with him.

55.     Two days later, on June 28, 2017, Thakrar sent Smith another e-mail repeating his demand that the duplicate advertisements posted by Alliance be removed and that new advertisements posted by Harbortouch Screen that day were still being copied by Alliance.

56.     In a responding e-mail, Smith mocked Thakrar and lamented that Harbortouch Screen was competing with Alliance on webpages on behalf of Shift4.  Smith further stated that he had "hired an advertising company in India to do all my CL [Craigslist] advertising for me. …  Unfortunately because we sell for the SAME company our ads will always be SIMILAR in nature."  Smith claimed that he had directed his advertising company not to exactly copy Harbortouch Screen's Shift4 advertisements, yet Alliance continued to produce internet advertisements that were nearly identical to Harbortouch Screen's advertisements.  Smith again urged Thakrar to work for him and said he would have the duplicate advertisements modified. No changes were made to Alliance's internet advertisements.

57.     Defendants also created misleading telephone numbers and website addresses to confuse potential merchants.  Below is an example of a Shift4 advertisement created by Harbortouch Screen in 2018 (left side) that was duplicated by Defendants (right side) – and promptly posted the same day – with a slightly altered telephone number and website address.

4846-8951-6677

*Harbortouch Screen's Advertisement    Defendants' Duplicate Advertisement*



58.    Upon information and belief, Defendants continued to harass Thakrar with phone calls.  For example, in late June 2018, Smith called Thakrar's personal telephone at 2 a.m. demanding that Harbortouch Screen stop advertising on certain webpages, terminate its ISO relationship with Shift4, and instead partner with Alliance.  Thakrar declined, and the following week Harbortouch Screen was subjected to disruptive robo-calls tying up its telephone lines, as well as harassing and vulgar voicemails left by Smith on Thakrar's personal telephone.

59.    In what has become a near-daily occurrence, Defendants continue disrupt Harbortouch Screen with more than 50 robo-calls per day.

60.    Harbortouch Screen and Shift4 have lost dozens of merchant accounts as a result of these unlawful and infringing advertising practices.  Upon information and belief, after misleading clients to call Alliance rather than Harbortouch Screen, Defendants make false statements about Shift4's free POS systems not really being free and involving hidden fees. Merchants who have already initiated merchant applications to Shift4 or scheduled product demonstrations have called Harbortouch Screen to cancel after speaking with Defendants.

**D.  Defendants' Wrongful Conduct and Unauthorized Use of Shift4's Marks Continued After Alliance was Terminated as a Shift4 ISO**

61.     Alliance's ISO agreement with Shift4 came due for renewal in October 2017. Because Alliance did not have active merchant accounts with Shift4, however, its ISO Agreement was automatically terminated by Shift4 effective October 17, 2017.

62.     Effective October 17, 2017, therefore, Alliance was no longer authorized to use intellectual property owned by Shift4, including but not limited to the Harbortouch Registrations, or licensed to Shift4, such as the "Bar Rescue" logo or the likeness of its host, John Taffer.

63.     At no time since October 17, 2017 has Shift4 authorized Defendants to use its trademarks or other proprietary marketing materials.

64.     Nevertheless, Defendants' duplication of Shift4 ISOs' advertisements, including unauthorized use of Shift4's trademarks and proprietary marketing materials, continued unabated.

65.     By way of example, in early 2018, Harbortouch Screen posted internet advertisements displaying Shift4's POS hardware bearing the HARBORTOUCH Mark, together with the Bar Rescue logo.

66.     Each of those Harbortouch Screen advertisements were almost immediately duplicated by Defendants.  Defendants only added a different telephone number for Defendants, but continued to prominently display the Shift4's Harbortouch-branded POS hardware bearing the HARBORTOUCH Mark, together with the "Bar Rescue" logo, which Defendants had no license or other authorization to use.

4846-8951-6677

**Harbortouch Screen's Advertisement**      **Defendants' Duplicate Advertisement**




**Harbortouch Screen's Advertisement**      **Defendants' Duplicate Advertisement**




67.     Further, Defendants are improperly infringing on Shift4 advertisements featuring Taffer and Bar Rescue by posting an identical advertisement with Alliance logos and contact information.

4846-8951-6677

*Shift4's Advertisement*          *Defendants' Duplicate Advertisement*




68.     In early 2018, Shift4 was notified that Defendants were misappropriating Shift4's marketing materials by modifying a Shift4 advertisement featuring John Taffer and Bar Rescue.

69.     In an attempt to get Defendants to stop their infringing and unlawful activity, on April 25, 2018, Shift4 sent a cease and desist letter to Defendants advising that their use of the HARBORTOUCH Mark and the marks associated with John Taffer were unauthorized and demanding that Defendants cease such use immediately.

70.     Defendants ignored the April 25, 2018 cease and desist letter and have willfully and purposefully continued their unauthorized and unlawful use of the HARBORTOUCH Mark and the marks associated with Bar Rescue and Taffer.

### E.  Defendants' Conduct Escalates with "Ghost" Robo-Calls and False Websites.

71.     Beginning in or about October 2018, Defendants' telephone disruption efforts have grown more sophisticated.  Defendants starting using "ghost" robo-calls that cause Shift4's toll-free telephone number to appear on a recipient ISO's caller ID display with only static on the other end of the line.  These robo-calls are tying up the ISOs' telephone lines,

4846-8951-6677

blocking current and potential merchants from contacting the ISOs to set up Shift4 merchant accounts.

72.     As a result, Shift4 ISOs have begun contacting Shift4 to complain about barrages of disruptive telephone calls they believed were originating from Shift4, but really, upon information and belief, those calls are originated by Defendants.   The volume of telephone complaints, in turn, disrupted Shift4's own operations.

73.     In response to these complaints, Shift4 investigated the cause of these telephone calls, at which point they were informed by Iava that the ghost robo-calls are being orchestrated by Defendants for the benefit of Alliance.  Upon information and belief, this was confirmed to Iava in a November 2018 telephone call with Smith's colleague, Joshua Tarter.

74.     Shift4 learned that Shift4 ISOs had also been receiving ghost robo-calls from Plymouth's telephone number.  As a result of the ghost calls showing Plymouth's telephone number, Plymouth also received disruptive telephone complaints from other ISOs.

75.     In or about November 2018, Iava discovered and informed Shift4 of a website with the domain name Harbortouch.sucks that redirects the user to another website, Harbortouch.pk, with a top-level "pk" domain indicating the website originates in Pakistan. Upon information and belief, Smith works with an individual located in India or Pakistan who assists Defendants with posting internet advertisements and initiating the harassing robo-calls to Shift4's ISOs.

76.     Publicly available domain name registration information reveals that Harbortouch.sucks and Harbortouch.pk were created in or about November 2017, which is shortly after Shift4's October 2017 termination of its ISO agreement with Alliance.  Though these domain names consist entirely of Shift4's protected HARBORTOUCH Mark, Shift 4 did

not register those domain names, nor does it manage or control what appears on the websites associated with those domain names.  Upon information and belief, Defendants created and maintain the Harbortouch.sucks and Harbortouch.pk websites.

77.    The Harbortouch.pk website consists of a home page with links to five other pages styled as blog posts titled "Shift 4 it's in the name!;" "Ripoff Report(s) & How we DELETE Negative Reviews & Buy Positive ones!;" "Cooking the Books, Money Woes & Future POS Acquisition;" "Free POS System Pricing & Commissions (Hint) NOT FREE;" and "'FREE' POS System – Truth in Advertising FTC: 16 CFR Part 251."

78.    The Harbortouch.pk website presents blog-style posts falsely attributed to Shift4 ISO Thakrar and/or Shift4.  At the top right corner of every Harbortouch.pk page is a photo of Thakrar, under which Thakrar is identified as "Advisory Board Member – Harbortouch" followed by a statement attributed to Thakrar saying:

> As a successful entrepreneur I have enjoyed the lifestyle many dream to have. With 3 beautiful children, a large home in California and Tesla at the age of 44 years old I have come to realize that family and integrity are utmost important. Sometimes, I feel guilty knowing that I have tens of thousands of dollars in residuals coming in from customer getting SCAMMED. Some may call it my "midlife crisis" but I am here to finally expose to truth!

79.    The reference to Thakrar as a "Harbortouch" advisory board member is significant in that Shift4 was previously named Harbortouch Payments – a well-known name in the payments industry – and this designation of Thakrar makes it appear that he is speaking on behalf of Shift4.

80.    Thakrar has no connection with either Harbortouch.sucks or Harbortouch.pk. Thakrar never authorized the Harbortouch.sucks or Harbortouch.pk websites to use his name, his likeness, or the name of Harbortouch Screen.  Further, Thakrar never made or approved any

4846-8951-6677

of the false and negative statements about Shift4 or its brands that are attributed to him on Harbortouch.pk.

81.     For example, a Harbortouch.pk page that is falsely attributed to Thakrar shows a blog post titled "Cooking the Books, Money Woes & Future POS Acquisition" states that Shift4 acquired a company named Future POS "in an effort to 'Cook the Books' so Shift4 (*aka $*) will appear more profitable. The ultimate goal? To take this private company Public before it is too late and they have to declare Chapter 11 and leave a big gaping hole in the pos system industry."  While it is true that Shift4 acquired Future POS in 2018, the remaining statements about Shift4 "cooking the books" and heading toward bankruptcy are false.

82.     That same Harbortouch.pk page also makes false and defamatory statements about the conduct of John Giles and Steve Pritchard, two executives of Shift4 subsidiary Future POS.  Specifically, on the "Cooking the Books" page, Defendants falsely malign Giles and Pritchard as businessmen who bullied and cheated sales representatives in an effort to damage Shift4's relationships with current and prospective ISOs.

83.     Another Harbortouch.pk web page shows blog posts falsely attributed to Thakrar suggesting that Shift4 is lying to merchants about free payment processing equipment to convince merchants to process payments through Shift4.  These implications are also false.

84.     Defendants are attributing these lies about Shift4 to Thakrar (and prominently identifying him as a Shift4 advisory board member) in an effort to discredit Shift4 in the eyes of current and potential merchants in order to induce them to use Defendants' payment processors and ultimately causing Shift4 to lose revenue.  The Harbortouch.sucks website address was highlighted in Alliance advertisements posted to webpages in multiple cities.  An example is below:



85.     Smith has admitted to Iava and Thakrar that Defendants' ongoing campaign of unlawful harassment and disruption of Shift4 ISOs, as well as physical threats against their principals, is intended to exclude Shift4 advertisements from certain webpages and divert merchants to Defendants.  This conduct causes harm to Shift4 and its ISOs.

86.     Defendants' efforts to prevent Shift4 ISOs from developing and maintaining merchant accounts for Shift4 threatens the growth and stability of the merchant base from which Shift4 derives its revenue while simultaneously profiting Defendants.

87.     The acts of Defendants complained of herein are unlawful, willful, and knowingly performed with the intent and result of injuring Shift4.

88.     Defendants have failed to comply with Shift4's demands that they cease these activities.  Defendants continued infringement of Shift4's rights and other unlawful activities have left Shift4 with no choice but to commence the present lawsuit.

<u>COUNT I</u>

**FEDERAL TRADEMARK & SERVICE MARK INFRINGEMENT**

89.     Shift4 repeats and realleges each and every allegation contained in the foregoing Paragraphs as though fully set forth herein.

4846-8951-6677

90.     Defendants, through the conduct described above, are, without Shift4's consent, using reproductions, counterfeits, copies and/or colorable imitations of the marks that are the subject of the Harbortouch Registrations in commerce in connection with the sale, offering for sale and advertising of Defendants' goods and services, which has and is likely to cause confusion or mistake and/or to deceive in violation of the Lanham Act Section 32(1) (15 U.S.C. § 1114(1)).

91.     As a result of Defendants' acts of infringement, Shift4 has suffered, and if not enjoined will continue to suffer, serious and irreparable harm.  Shift4 is therefore entitled to injunctive relief pursuant to Section 34 of the Lanham Act, (15 U.S.C. § 1116).

92.     Defendants' aforesaid wrongful conduct has been willful, wanton and malicious and done with full knowledge of Shift4's prior use and registration of, and rights in and to, the HARBORTOUCH Mark and intent that such use cause confusion, to cause mistake, or to deceive consumers.  Shift4 is therefore entitled to an award of its reasonable attorney's fees and costs, and treble its actual damages, pursuant to Section 35(a) of the Lanham Act (15 U.S.C. § 1117(a)).

**COUNT II**

**UNFAIR COMPETITION UNDER SECTION 43(a) OF THE LANHAM ACT**

93.     Shift4 repeats and realleges each and every allegation contained in the foregoing Paragraphs as though fully set forth herein.

94.     Defendants, through their conduct as described above, are selling goods and services utilizing marks that are colorable imitations and/or exact duplicates of Shift4's protectable HARBORTOUCH Mark, which is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendants with Shift4, or as to the

4846-8951-6677

origin, sponsorship or approval of Defendants' goods, services and commercial activities by Shift4 in violation of Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)(1)(A)).

95.     Defendants, through their conduct as described above, are also using colorable imitations and/or exact duplicates of Shift4's protectable HARBORTOUCH Mark in their commercial advertising and promotion in a manner which misrepresents the nature, characteristics and qualities of Defendants' goods, services and commercial activities in violation of Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)(1)(B)).

96.     As a result of Defendants' acts of unfair competition, Shift4 has suffered, and if not enjoined will continue to suffer, serious and irreparable harm.  Shift4 is therefore entitled to injunctive relief.

97.     Defendants' aforesaid wrongful conduct has been willful, wanton and malicious and done with full knowledge of Shift4's prior use of, and rights in and to, the HARBORTOUCH Mark and intent that such use cause confusion, to cause mistake, or to deceive or mislead consumers as well as misrepresent the nature, characteristics and qualities of Defendants' goods, services and commercial activities.  Defendants' conduct constitutes an exceptional case, and Shift4 is therefore entitled to an award of its reasonable attorney's fees and costs, and treble its actual damages, pursuant to Section 35(a) of the Lanham Act (15 U.S.C. § 1117(a)).

## COUNT III

### FALSE ADVERTISING UNDER SECTION 43(a) OF THE LANHAM ACT

98.     Shift4 repeats and realleges each and every allegation contained in the foregoing Paragraphs as though fully set forth herein.

4846-8951-6677

99.   Alliance competes with Shift4 to provide payment processing services to retail merchants nationwide.

100.   Defendants, through their conduct and the internet postings as described above, have made false and misleading statements in commercial advertising efforts in connection with the promotion and sale of their goods and services.

101.   These statements constitute a vicious misrepresentation and maligning of Shift4's trademarked products and services.  The false and misleading statements go to the heart of Shift4's goodwill and reputation as well as the material nature of Shift4's payment processing services and products.

102.   Defendants' statements were published, disseminated and communicated on a massive scale in different forms and by different media to Shift4's customers and prospective customers in interstate commerce.  Upon information and belief, Defendants have also used these false and misleading statements in connection with commercial promotion of Alliance's payment processing services to Shift4's customers and prospective customers.  Defendants know these statements are false and malicious and are calculated to negatively impact Shift4 and the sales of Shift4's products and services.

103.   Alliance is directly responsible for the acts of its agents and employees, including Smith, in spreading the false information about Shift4.  Accordingly, Alliance has published, circulated, encouraged, acquiesced in and/or ratified the foregoing vicious misrepresentations of fact and false statements concerning Shift4 and its payment processing services, which were known to be false and which have caused great harm to Shift4, its products and its business.

4846-8951-6677

104.   Alliance has made, or has allowed to be made, the foregoing false, misleading, defamatory and disparaging statements in connection with the promotion and sale of Alliance's products in order to obtain economic gain and persuade consumers to cease processing payments through Shift4 and instead use Alliance's payment processing services, all to the benefit of Defendants and to the detriment of Shift4.

105.   The aforementioned false and misleading statements and representations made by Defendants concerning Shift4 and its branded services and products were statements and representations of a commercial nature and constituted commercial speech because they were published, disseminated or otherwise communicated with the intent of increasing Alliance's sales and/or decreasing Shift4's sales.

106.   The aforementioned statements and acts actually deceived and had a tendency to deceive a substantial segment of the intended audience of Shift4's potential and actual customers and consumers.   These false, misleading and disparaging statements and the deceptions practiced influenced the purchasing decisions of actual and potential customers and consumers of Shift4's products.

107.   The aforementioned statements and acts have and will continue to be made in interstate commerce, including, but not limited to, in internet advertisements and on Defendants' websites.

108.   Shift4 has been injured as a direct and proximate result of Defendants' unlawful and tortious conduct.   Shift4 has suffered a diversion of its sales from itself to Defendants as well as injury to the goodwill and reputation that Shift4 and its products enjoy with the retail merchants.

4846-8951-6677

109.    The publication of these false and deceptive statements and the other acts and conduct of Defendants as alleged above constitute false and deceptive trade practices in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), which have caused, and if not enjoined will continue to cause, harm and damage to Shift4's business and valuable HARBORTOUCH Mark.

110.    As a result of Defendants' conduct, Shift4 has suffered damages in an amount to be proven at trial.

111.    As a result of Defendants' improper conduct, Shift4 has suffered and will continue to suffer serious and irreparable harm for which there is no adequate remedy at law. Accordingly, Shift4 is entitled to injunctive relief.

112.    Defendants deliberately, willfully, and in bad faith committed the aforementioned violations of the Lanham Act.  Defendants' conduct constitutes an exceptional case, and Shift4 is therefore entitled to an award of its reasonable attorney's fees and costs, and treble its actual damages, pursuant to Section 35(a) of the Lanham Act (15 U.S.C. § 1117(a)).

## COUNT IV

### VIOLATION OF THE ANTICYBERSQUATTING CONSUMER PROTECTION ACT (15 U.S.C. § 1125(d))

113.    Shift4 repeats and realleges each and every allegation contained in the foregoing Paragraphs as though fully set forth herein.

114.    Shift4 owns the valid and legally protectable HARBORTOUCH Mark, which is indisputably distinctive.

115.    Defendants have registered and used the domain names Harbortouch.sucks, Harbortouch.pk and HarbortouchScreen.us (hereinafter, collectively, "Defendants' Domains"),

4846-8951-6677

which incorporate and are essentially identical to Shift4's distinctive HARBORTOUCH Mark and confusingly similar to Shift4's domain name, Harbortouch.com.

116.   In fact, two of Defendants' Domains are comprised exclusively of the HARBORTOUCH Mark.

117.   Defendants registered Defendants' Domains with bad faith intent to profit from them.

118.   Defendants have diverted, are diverting and plan to further divert consumers away from Shift4's website (located at www.harbortouch.com) and from Shift4's ISOs' websites (such as www.HarbortouchScreen.com) to Defendants' own websites for commercial gain by creating a likelihood of confusion as to the source, sponsorship, affiliation or endorsement of its website and use of Defendants' Domains.

119.   Defendants have no valid trademark or other intellectual property rights in the HARBORTOUCH Mark or in any of Defendants' Domains.

120.   Defendants acted in bad faith in using Defendants' Domains to derive commercial profits by damaging the reputation of Shift4 in an effort to drive customers away from Shift4 all to the benefit of Defendants.

121.   Such registration and use of Defendants' Domains is actionable under the Anticybersquatting Consumer Protection Act, Section 43(d) of the Lanham Act (15 U.S.C. § 1125(d)).

122.   Shift4 has no adequate remedy at law and has suffered, and will continue to suffer, irreparable harm and damage as a result of Defendants' aforesaid acts, which, if not enjoined, will cause injury and monetary loss in an amount presently incalculable.   Accordingly, Shift4 is entitled to injunctive relief along with an order transferring Defendants' Domains to Shift4.

4846-8951-6677

## COUNT V

### PENNSYLVANIA COMMON LAW TRADEMARK INFRINGEMENT

123.    Shift4 repeats and realleges each and every allegation contained in the foregoing Paragraphs as though fully set forth herein.

124.    Shift4 owns and holds all legal rights to the HARBORTOUCH Marks that are valid and legally protectable under the common law of Pennsylvania.

125.    Defendants have used the HARBORTOUCH Marks in a manner that is likely to cause confusion in merchants who currently or may prospectively utilize Shift4's payment processing services and/or products.  Such confusion arises from Defendants' misappropriation of the HARBORTOUCH Marks in advertisements for payment processing services provided by Alliance or other entities associated with Defendants.

126.    As a result of Defendants' acts of infringement, Shift4 has suffered, and will continue to suffer, serious and irreparable harm for which there is no adequate remedy at law.

## COUNT VI

### PRODUCT DISPARAGEMENT/TRADE LIBEL AGAINST ALL DEFENDANTS

127.    Shift4 repeats and realleges each and every allegation contained in the foregoing Paragraphs as though fully set forth herein.

128.    Defendants, through their conduct as described above, have made false statements of fact concerning Shift4's business conduct and practices that reflect negatively on its payment processing services and products.

129.    For example, Defendants have made false statements of fact that reflect negatively on Shift4's business model of providing free POS systems to merchants who use Shift4's payment processing services.

4846-8951-6677

130.    Defendants have published these false and disparaging statements to third parties through the publication of the Harbortouch.sucks and Harbortouch.pk websites and/or the contents thereof.

131.    The negative statements about Shift4's business model and practices published on the Harbortouch.pk website are unequivocally false and are not subject to any legal privilege.

132.    Defendants published these disparaging statements with the deliberate intent to injure Shift4 out of hatred, ill-will, or spite against Shift4 and Shift4's chief executive officer and with willful, wanton or reckless disregard for the truth and Shift4's rights.

133.    Defendants' conduct constitutes disparagement of Shift4 and Shift4's products and services under the common law of Pennsylvania, which acts have been committed knowingly and willfully and have injured Shift4 in its trade and business.

134.    As a result of Defendants' conduct, Shift4 has suffered pecuniary loss through the loss of current and prospective customers, as well as serious and irreparable harm to its business reputation for which there is no adequate remedy at law.

## COUNT VII

## DEFAMATION

135.    Shift4 repeats and realleges each and every allegation contained in the foregoing Paragraphs as though fully set forth herein.

136.    Defendants, through their conduct as described above, have made false and defamatory statements of fact concerning Shift4 that directly impute to its business.

137.    Defendants, through their conduct as described above, have published these defamatory statements to third parties.

4846-8951-6677

138.    As described in detail above, the negative statements attributed to Thakrar on Harbortouch.sucks / Harbortouch.pk are unequivocally false.

139.    Defendants published these defamatory statements with the deliberate intent to injure Shift4 out of hatred, ill-will, or spite against Shift4 and Shift4's chief executive officer and with willful, wanton or reckless disregard for the truth and Shift4's rights.

140.    Defendants' conduct constitutes defamation against Shift4 under the common law of Pennsylvania, which acts have been committed knowingly and willfully and have injured Shift4 in its trade and business.

141.    As a result of Defendants' aforementioned, defamatory conduct, Shift4's basic integrity and business reputation has been impugned.  Shift4 has also suffered pecuniary loss resulting directly from the effect of Defendants' wrongful conduct through the loss of current and prospective customers.  As a result of Defendants' defamatory acts, Shift4 will continue to suffer serious and irreparable harm for which there is no adequate remedy at law.

<u>**COUNT VIII**</u>

**TORTIOUS INTERFERENCE WITH CONTRACT**

142.    Shift4 repeats and realleges each and every allegation contained in the foregoing Paragraphs as though fully set forth herein.

143.    Shift4 has entered into contracts with independent sales offices pursuant to which those ISOs are obligated to develop and maintain relationships with merchants to utilize Shift4's payment processing products and services.

144.    As a direct and proximate result of Defendants' harassment of Shift4 ISOs such as Plymouth and Harbortouch Screen through the employment of false duplicate Shift4 advertisements that misdirect potential merchants to Defendants, disruptive robo-calls, and

physical threats, Defendants have hindered Shift4 ISOs' efforts to market Shift4's products and services.   As a direct and proximate result of Defendants' conduct, Defendants have compromised the ability of Shift4 ISOs to perform their core contractual obligations pursuant to their agreements with Shift4.

145.    Defendants' interference with Shift4's ISOs contracts deprived Shift4 of new merchant accounts and thereby caused Shift4 to lose revenue.

146.    By their conduct as alleged herein, Defendants have intentionally interfered with Shift4's contracts with multiple Shift4 ISOs.

147.    Defendants have no justification or excuse for their interference with Shift4's contracts with Shift4's ISOs through Defendants wrongful acts.

148.    By reason of the conduct as alleged herein, Defendants have caused damage to Shift4.

149.    Defendants' conduct constitutes acts of tortious interference with contract under the common law of Pennsylvania, which acts have been committed knowingly and willfully and have injured Shift4 in its trade and business.

## COUNT IX

### TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS RELATIONSHIPS

150.    Shift4 repeats and realleges each and every allegation contained in the foregoing Paragraphs as though fully set forth herein.

151.    Shift4 had a reasonable expectation of economic advantage with respect to the ability of Shift4 ISOs to identify and recruit prospective merchants who would utilize Shift4's payment processing products and services, thereby generating revenue for Shift4 in the form of processing fees.

4846-8951-6677

152.    Defendants' creation of duplicate fake Shift4 advertisements incorporating unlicensed trademarks and marketing materials owned by Shift4; their ability to manipulate the placement of their advertisements immediately above genuine Shift4 advertisements on webpages; their employment of disruptive robo-calls that denied Shift4 ISOs the ability to utilize their telephones for days on end; and the making of physical threats against the principals of Shift4 ISOs was intended to hinder and dissuade Shift4 ISOs from marketing Shift4's products and services to potential merchants on the internet.  As a result, Shift4 ISOs generated fewer potential leads for new merchants that resulted in lost opportunities for Shift4 to open new merchant accounts and generate revenue through processing fees.

153.    By their conduct as alleged herein, Defendants have intentionally interfered with Shift4's pursuit of a prospective economic relationships with these merchants who, but for Defendants' conduct as described above, would have otherwise opened merchant accounts to process payments through Shift4.

154.    Defendants' interference with Shift4's prospective customers caused the loss of Shift4's prospective economic gain.

155.    Defendants have no justification or excuse for their interference with Shift4's prospective economic gain through their tortious conduct.

156.    By reason of the conduct as alleged herein, Defendants have caused damage to Shift4.

157.    Defendants' conduct constitutes acts of tortious interference with prospective economic relationships under the common law of Pennsylvania, which acts have been committed knowingly and willfully and have injured Shift4 in its trade and business.

## COUNT X

### UNFAIR COMPETITION UNDER PENNSYLVANIA LAW (73 P.S. §201-9.2)

158.    Shift4 repeats and realleges each and every allegation contained in the foregoing Paragraphs as though fully set forth herein.

159.    Defendants' conduct in creating internet advertisements that duplicate Shift4 advertisements originally posted by Shift4 ISOs has caused and is causing a likelihood of confusion or of misunderstanding among Shift4's current and potential customers as to the payment processing services and products provided by Shift4 compared to those offered by Defendants.

160.    Defendants' conduct in publishing posts and articles on the infringing websites Harbortouch.sucks and Harbortouch.pk have disparaged Shift4's payment processing products and services with false and/or misleading representations of fact regarding Shift4's business conduct and practices.

161.    Defendants' conduct constitutes acts of unfair competition against Shift4 under the laws of Pennsylvania, which acts have been committed knowingly and willfully and have injured Shift4 in its trade and business.

162.    As a result of Defendants' acts of unfair competition, Shift4 has suffered and will continue to suffer pecuniary loss of processing fees from potential merchant clients that decided against utilizing Shift4's payment processing services and products.

163.    As a result of Defendants' acts of unfair competition, Shift4 has suffered and will continue to suffer serious and irreparable harm for which there is no adequate remedy at law.

4846-8951-6677

## COUNT XI

### INJURIOUS FALSEHOOD

164.    Shift4 repeats and realleges each and every allegation contained in the foregoing Paragraphs as though fully set forth herein.

165.    Defendants, through their conduct as described above, knowingly made false statements of fact that have been published to third parties.

166.    Defendants, through their conduct as described above, have published these false statements with malicious intent to cause Shift4 to suffer a loss of revenue.

167.    As a result of Defendants' aforementioned conduct, Shift4 has suffered pecuniary loss resulting directly from Defendants' wrongful conduct through the loss of current and prospective customers who otherwise would have utilized Shift4's payment processing products and services.

168.    Defendants' conduct constitutes injurious falsehood against Shift4 under the common law of the Pennsylvania, which acts have been committed knowingly and willfully and have injured Shift4 in its trade and business.

## COUNT XII

### UNJUST ENRICHMENT

169.    Shift4 repeats and realleges each and every allegation contained in the foregoing Paragraphs as though fully set forth herein.

170.    Defendants received economic benefit under circumstances that would make it unjust for Defendants to retain the benefits unlawfully obtained at Shift4's expense.

171.    Specifically, Defendants have obtained customers that would have otherwise have utilized Shift4's payment processing services and products had they not been misled to

37

contact Defendants by Defendants' deceptive internet advertising, blocked from communicating with Shift4 ISOs by robo-calls, and/or exposed to false statements published at Harbortouch.sucks / Harbortouch.pk.

172.   Shift4 is entitled to restitution for Defendants' unjust enrichment.

## COUNT XII

## INJUNCTIVE RELIEF

173.   Shift4 repeats and realleges each and every allegation contained in the foregoing Paragraphs as though fully set forth herein.

174.   Shift4 will be irreparably harmed if Defendants are not enjoined from using Shift4's HARBORTOUCH Mark, other Shift4 intellectual property, or other intellectual property that is the subject of licenses granted to Shift4 in connection with the provision of any goods and services, as it has no way to control Defendants' use of the intellectual property or the quality of the products or services provided under the intellectual property.

175.   Shift4 will be irreparably harmed if Defendants are permitted to continue their campaign of harassing, threatening, and publishing false and defamatory statements about Shift4 and its affiliates through the course of conduct described above.

176.   Shift4 does not have an adequate remedy at law for Defendants' ongoing misconduct, and entry of an injunction will serve the public interest.

## PRAYER FOR RELIEF

WHEREFORE, Shift4 demands judgment in favor of Shift4 and against Defendants as follows:

A.   That Defendants, and their officers, agents, servants, distributors, affiliates, employees, attorneys and representatives and all those in privity or acting in concert with Defendants, and each of them, be permanently enjoined and restrained from, directly or indirectly:

4846-8951-6677

i.    Utilizing the HARBORTOUCH Mark, or any other marks confusingly similar thereto, alone or in combination with other words, names, styles, titles, designs or marks in connection with the provision, promotion, marketing or advertising of their goods and services;

ii.   Utilizing in any other way any other marks or designations so similar to Shift4's HARBORTOUCH Mark as to be likely to cause confusion, mistake or deception;

iii.  Creating and/or utilizing advertisements that duplicate the appearance of advertisements created and/or utilized by Shift4 or any agent, affiliate, or independent sales office of Shift4;

iv.   Creating and/or maintaining any webpage or internet domain that contains any false and/or defamatory reference to Shift4 or any of its officers, employees, services, products, or brands, including but not limited to Harbortouch;

v.    Falsely designating the origin, sponsorships or affiliation of Defendants' goods and services in any manner;

vi.   Using any words, names, styles, designs, titles, designations, or marks which create a likelihood of injury to the business reputation of Shift4 and the goodwill associated therewith;

vii.  Using any trade practices whatsoever, including those complained of herein, which tend to unfairly compete with or injury Shift4's business and goodwill pertaining thereto; and

viii. Committing any of the aforesaid unfair methods of competition, unfair or deceptive acts or practices;

ix.   Otherwise competing unfairly with Shift4 in any manner;

4846-8951-6677

x.      Causing automated telephone calls to repeatedly dial Shift4 or any entity associated with Shift4 for the purpose of disrupting its operations or adversely affecting Shift4's business relationships;

xi.     Continuing to perform in any manner whatsoever any of the acts complained of in this Complaint; and

B.      That Defendants be ordered to transfer ownership and control of the internet domains and websites for Harbortouch.sucks, Harbortouch.pk and HarbortouchScreen.us to Shift4; and

C.      That Defendants be required to pay to Shift4 compensatory damages for the injuries sustained by Shift4 in consequence of the unlawful acts alleged herein and that such damages be trebled pursuant to 15 U.S.C. § 1117 because of the willful and unlawful nature of the acts as alleged herein; and

D.      That Defendants be required to account for and pay over to Shift4 all gains, profits and advantages derived by them from the unlawful activities alleged herein; and

E.      That Defendants be required to pay to Shift4 all of its litigation expenses, including but not limited to reasonable attorneys' fees and the costs of this action; and

F.      That Defendants be directed to file with the Court and serve upon Shift4's counsel within thirty (30) days after service on Defendants of an injunction in this action, or such extended period as the Court may direct, a report in writing and under oath, setting forth in detail the manner and form in which Defendants have complied therewith; and

G.      Awarding Shift4 punitive and exemplary damages as the Court finds appropriate to deter any future willful conduct; and

H.      Such other and further relief in favor of Shift4 and against Defendants as the Court may deem just and proper.

4846-8951-6677

Respectfully submitted,

FITZPATRICK LENTZ & BUBBA, PC


By:   *s/Joshua A. Gildea*
              Joshua A. Gildea
              Atty. ID: 205911
              4001 Schoolhouse Lane, P.O. Box 219
              Center Valley, PA 18034
              610-797-9000
              jgildea@flblaw.com


              Melissa Salimbene (pro hac vice pending)
              Mauro G. Tucci Jr. (pro hac vice pending)
              CHIESA SHAHINIAN &
              GIANTOMASI PC
              One Boland Drive
              West Orange, New Jersey 07052
              (973) 530-2045

              *Attorneys for Plaintiff*

4846-8951-6677